IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRIPLE CANOPY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04 C 3265 |
| | ) | |
| BARRETT H. MOORE, MARY S. | ) | Judge Mark Filip |
| MOORE, and TRIPLE CANOPY | ) | |
| GROUP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Triple Canopy, Inc. ("Triple Canopy"), filed this action on May 7, 2004,

against defendants Barrett H. Moore ("Moore"), Mary Moore (Barrett Moore's wife,

hereinafter referred to as "Mary"), and Triple Canopy Group, Inc. ("Group"). The

complaint ("Complaint") variously alleges: breach of fiduciary duty (Count I), violation

of the Computer Fraud and Abuse Act (18 U.S.C. § 1030 *et seq*.) (Count II), unjust

enrichment (Count V), common law fraud (Count VI), cyberpiracy under 15 U.S.C. §

1125(d) (Count VIII), unfair competition under 15 U.S.C. § 1125(a) (Count IX), tortious

interference with contract (Count X), tortious interference with prospective economic

gain (Count XI), violation of the Illinois Fraud and Deceptive Business Practices Act

(815 ILCS 505/2) (Count XII), and violation of the Illinois Uniform Deceptive Trade

Practices Act (815 ILCS 510/2) (Count XIII). The Complaint also seeks a declaratory

judgment under 28 U.S.C. § 2201(a) regarding the validity and enforceability of various

agreements (Count III), rescission (Count IV), and an equitable accounting (Count VII).

Moore is named as a defendant in all Counts. Mary is named as a defendant to

Counts III, VII, VIII, X, XI, XII, and XIII only, and Group is named as a defendant to Counts III, IV, V, VII, VIII, IX, X, XI, XII, and XIII only.

On June 24, 2004, Moore moved for a stay of this proceeding and to compel mediation and, if necessary, arbitration of the disputes, pursuant to an alternative dispute resolution ("ADR") clause in a shareholder agreement. The Court entered an order on November 15, 2004, granting the motion in part and denying it in part. (D.E. 18 (the "Arbitration Order").)[1] Specifically, the claims against Moore were ordered to ADR and/or arbitration and the case was stayed as to him alone; because Mary and Group were not parties to the shareholder agreement, litigation of the claims against them were not stayed. (*Id.*)

Thereafter, on January 13, 2005, Mary and Group moved to dismiss the Complaint on the grounds that (i) with respect to Counts III, V, VII, VIII, and X-XIII, Triple Canopy failed to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and (ii) with respect to Counts IV, VII, XII, and XIII, Triple Canopy failed to plead with particularity as required by Federal Rule of Civil Procedure 9(b). (D.E. 28 (the "Motion to Dismiss").) Mary and Group requested an order in the alternative requiring Triple Canopy to provide a more definite statement of its claims pursuant to Federal Rule of Civil Procedure 12(e). (*Id.* at 14-15) For the reasons stated below, the Court grants the Motion to Dismiss in part and denies it in part, and denies the request for a more definite statement.

---

[1]     The various docket entries in this case are cited as "D.E. __."

## FACTS[2]

Triple Canopy is a private military contractor that provides security services, most recently for the Coalition Provisional Authority in Iraq. (D.E. 1 ¶ 1.) Moore founded the company in 2002 and served as Chief Executive Officer until his termination by the Board of Directors in April 2004. (*Id.* ¶¶ 19, 20, 78.) In October 2003, Moore, Triple Canopy, and others entered into a Shareholder Agreement that, *inter alia*, established the parameters of the management of the company, including defining the powers of the Board of Directors and the Chief Executive Officer, and established provisions regarding the transfer of company shares. (D.E. 8, Ex. A.) The Shareholder Agreement contained the alternative dispute clause that was the subject of the Court's Arbitration Order. (D.E. 18.)

According to the Complaint, Moore fraudulently transferred certain intellectual property owned by Triple Canopy to Group, which apparently is a holding company controlled by Moore. (D.E. 1 ¶¶ 47-48, 53-54.) Triple Canopy alleges that Moore directed that Group be identified as the owner and applicant of certain Triple Canopy trademarks, "even though this intellectual property was obtained for and is used exclusively by Triple Canopy, which is its rightful owner." (D.E. 1 ¶ 53.)

Triple Canopy also alleges that Moore directed that Group be identified as the

---

[2]   The facts are taken from the Complaint. (D.E. 1.) The Court accepts the allegations as true, as precedent instructs, for present purposes. The Court takes no position on whether any of the allegations are actually well-founded. In addition, the Arbitration Order sets out the general background facts, and this opinion presumes familiarity with those facts as previously related. (D.E. 18.) Accordingly, in this opinion, the Court includes only facts necessary for the determination of the particular arguments raised by Mary and Group with respect to the Motion to Dismiss.

owner and registrant of more than ninety different Internet domain names used by and related to Triple Canopy. (*Id.* ¶ 55.) Triple Canopy claims that it is the true owner and exclusive user of these domain names. (*Id.* ¶¶ 55, 62.)

According to the Complaint, on September 15, 2003, Moore used his power as CEO to force Triple Canopy to enter into a "sham" licensing agreement (the "Licensing Agreement") with Group, whereby Triple Canopy would pay Group $5,000 per month for the right to use the aforementioned trademarks and domain names. (*Id.* ¶¶ 64-65 and Ex. G.) Thereafter, Moore allegedly caused Triple Canopy and Group to execute an amendment (the "Amendment") to the Licensing Agreement, which held the monthly payments in abeyance pending Triple Canopy's receipt of an investment from an outside investor and obligated Moore to assign or transfer the intellectual property held by Group to Triple Canopy. (*Id.* ¶¶ 66, 69 and Ex. H.) Triple Canopy claims that Moore violated the Amendment by failing to divest Group of the intellectual property. (*Id.* ¶ 70.)

Triple Canopy also alleges that Moore directed the company to purchase the <triplecanopy.com> domain name for $30,000 but then fraudulently directed that his wife Mary be listed as the owner and registrant of the domain name. (*Id.* ¶¶ 57-62.) According to the Complaint, Mary has never been employed by Triple Canopy. (*Id.* ¶ 60.)

### LEGAL STANDARDS

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). In deciding a motion to dismiss, the court

must assume all facts alleged in the complaint to be true, construe the allegations generously and view the allegations in the light most favorable to plaintiffs. *See, e.g., Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000); *Meriwether v. Faulkner*, 821 F.2d 408, 410 (7th Cir. 1987). The issue is not whether plaintiffs ultimately will prevail, but whether they are entitled to present evidence in support of their claim. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Dismissal for failure to state a claim is not appropriate unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003) (quoting *Conley*, 355 U.S. at 45-46).

A pleading merely must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In this regard, a party simply must provide the "defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47); *accord, e.g., Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999).

Rule 9(b), which enumerates the exceptions to notice pleading, specifies that with respect to "averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *See* Fed. R. Civ. P. 9(b). As articulated by the Seventh Circuit, "this means the who, what, when, where, and how; the first paragraph of any newspaper story, must be evident in the complaint. *DiLeo v. Ernst & Young*, 901

5

F.2d 624, 627 (7th Cir. 1990). In other words, Rule 9(b) requires "the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

Even if a complaint complies with Rule 8(a)(2) or Rule 9(b), as the case may be, the complaint is not immune from a motion to dismiss. These rules merely specify the conditions of the formal adequacy of a pleading; they do not specify the conditions of a pleading's substantive legal merit. *See, e.g., Kirksey*, 168 F.3d at 1041-42; *Reinbold v. Harris*, No. IP 00-0587-C-T/G, 2000 WL 1693792, at *1 (S.D. Ind. Nov. 7, 2000) (dismissing complaint under Rule 12 (b)(6) on the ground that the facts alleged did not constitute a cognizable claim under the relevant substantive law). The defendant bears the burden of establishing the legal insufficiency of a complaint. *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990).

## DISCUSSION

### I. Claims Against Mary and Group

#### A. Declaratory Judgment Under 28 U.S.C. § 2201(a) (Count III)

In Count III, Triple Canopy alleges that it is entitled to a declaratory judgment against Mary and Group. (D.E. 1 ¶ 115.) Mary and Group contend that the Court should exercise discretion and refuse Triple Canopy's request for a declaratory judgment proceeding. (D.E. 28 at 8.) Specifically, Mary and Group argue that, because the Court already ordered Triple Canopy's claims against Moore to arbitration, and the basis for any asserted right to declaratory judgment against Mary and Group is Moore's alleged wrongdoings, arbitration is the "more apt vehicle" for resolution of the declaratory claims

6

against Mary and Group. (*Id.*) For the reasons stated below, the Court respectfully disagrees, at least on the basis of the record to date.[3]

It is well settled that federal courts have discretion to decline to exercise their jurisdiction regarding a declaratory judgment claim. *See, e.g., Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1217 (7th Cir. 1980); *Mieling v. Norkar Technologies, Inc.*, 176 F. Supp. 2d 817, 819 (N.D. Ill. 2001) (Castillo, J.). But, "'a federal court cannot lightly abjure its responsibility to assert jurisdiction.'" *Sverdrup Corp. v. Edwardsville Comm. Unit Sch. Dist. No. 7*, 125 F.3d 546, 550 (7th Cir. 1997) (quoting *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 694 (7th Cir.1985)).

Mary and Group rely on *Mieling v. Norkar Technologies, Inc.*, 176 F. Supp. 2d 817, 819-20 (N.D. Ill. 2001), to support their contention that the Court should decline to exercise jurisdiction with respect to Count III. (D.E. 28 at 8.) In *Mieling*, the district court declined to assume jurisdiction over the plaintiff's claim for declaratory relief on the ground that the U.S. Patent and Trademark Office (the "PTO") was a "more apt

---

[3] A federal court may issue a declaratory judgment only in the case of an "actual controversy." 28 U.S.C. § 2201(a). Even though Mary and Group do not dispute the existence of an actual controversy, the actual controversy requirement flows from the Constitution and, hence, cannot be conceded, waived, or assumed. *See, e.g., Travelers Indem. Co. v. Standard Accident Ins. Co.*, 329 F.2d 329, 330 (7th Cir. 1964) (stipulation by parties regarding existence of actual controversy immaterial). Accordingly, the Court verifies *sua sponte* the existence of an actual controversy with respect to Count III. When deciding on the existence of an actual controversy, the question is whether there is a controversy between parties with adverse legal interests "of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *In re VMS Sec. Litig.*, 103 F.3d 1317, 1327 (7th Cir. 1996) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The Court finds that Triple Canopy has sufficiently pled the existence of an actual and immediate controversy between Triple Canopy, on the one hand, and Mary and Group, on the other hand, regarding, *inter alia*, control of the Triple Canopy trademarks, Internet domain names and other intellectual property. (D.E. 1 ¶¶ 81-85, 87, 110-111.)

7

vehicle" to determine the inventorship of patent application claims. 176 F. Supp. 2d at 820. The *Mieling* court relied on the fact that "the PTO has expertise in resolving inventorship disputes over claims in patent applications." *Id.* Mary and Group have not alleged, let alone proved, that an arbitrational panel has more expertise than the Court in resolving any of Triple Canopy's claims against Mary and Group. Accordingly, the Court is unpersuaded, at least on the basis of the record assembled to date, that Mary and Group have shown a sufficient basis for the Court to abjure from proceeding on declaratory judgment front.

To avoid the appearance of re-hashing the Court's previous Arbitration Order with respect to their Motion to Dismiss Count III, Mary and Group explain that they "do not request a stay in their motion to dismiss" pending arbitration of Triple Canopy's claims against Moore. (D.E. 33 at 8). In the Arbitration Order, the Court noted that none of the parties had even attempted to make any of the requisite showings that would justify delaying Triple Canopy's right to proceed on its claims in federal court against Mary and Group. (*Id.* at 17-18.) Nor does any party much such an attempt now. Mary and Group point out, however, that Triple Canopy still has not initiated arbitration against Moore. Triple Canopy's ongoing failure to pursue arbitration against Moore since the Court entered the Arbitration Order at least potentially suggests that Triple Canopy is waiting for substantive issues to be adjudicated by the Court first with respect to Mary and Group, and it will then attempt to argue issue preclusion or precedential effect in the arbitration with Moore.

Triple Canopy's failure to initiate arbitration proceedings at least potentially implicates concerns identified in the "evasion cases" discussed in *IDS Life Insurance v.*

8

*SunAmerica, Inc.*, 103 F.3d 524, 530 (7th Cir. 1996). In *IDS Life Insurance*, the Seventh Circuit observed that where a party to an arbitration agreement attempts to avoid the agreement by suing a related party that is not a signatory to the agreement, in the hope that the claim against the related party will be adjudicated first and have preclusive effect in the arbitration, "such a maneuver should not be allowed to proceed." 103 F.3d at 530. It is unclear whether there is any meaningful risk that Triple Canopy is attempting to undermine the arbitration in this manner. On the one hand, Mary and Group are different defendants than Moore, who presumably would have his own opportunity to litigate issues anew in the arbitration (although Moore perhaps could use any adverse rulings against Triple Canopy, which presumably would have had a fair opportunity and incentive to litigate, to Moore's own advantage). As a result of this information gap, the Court does not pass on whether this is an "evasion" case, or whether such concerns, if proven in more detail as events unfold, would justify a declination of the invitation to rule on the declaratory judgment count. For the present at least, the Court denies the Motion to Dismiss as to Count III.

**B.    Accounting (Count VII)**

In Count VII, Triple Canopy alleges that it is entitled to an equitable accounting with respect to the funds and other assets allegedly obtained improperly by Mary and Group. (D.E. 1 ¶ 151.) Mary and Group contend that Count VII should be dismissed because Triple Canopy failed to plead any of the elements for an accounting. (D.E. 28 at 9.)

An equitable accounting is an adjustment of the accounts of the parties and a rendering of judgment for the balance ascertained to be due. *Telewizja Polska USA, Inc.*

9

*v. Echostar Satellite Corp.*, No. 02 C 3293, 2004 WL 2005808, at * 4 (N.D. Ill. Sept. 3, 2004) (quoting 1 Am. Jur. 2d *Accounts and Accounting* § 52 (2004)). The elements of an accounting claim under Illinois law are well established. Specifically, an action for accounting "must allege the absence of an adequate remedy at law and at least one of the following: (1) a breach of fiduciary relationship between the parties, (2) fraud, (3) a need for discovery, or (4) the existence of mutual accounts which are complex in nature." *Id.* (quoting *Wausau Ins. Co. v. Woods Equip. Co.*, No. 01 C 8009, 2002 WL 398542, at *4 (N.D. Ill. Mar. 14, 2002); *see also Mann v. Kemper Fin. Cos.*, 618 N.E. 2d 317, 327 (Ill. App. Ct. 1992).

Three of the four possible bases for the remedy of accounting—breach of fiduciary duty, need for discovery, and existence of mutual accounts—are governed by the minimal requirements of federal notice pleading. *See, e.g., Enter. Warehousing Solutions, Inc. v. Capital One Servs.*, No 01 C 7725, 2002 WL 406976, at *6 (N.D. Ill. Mar. 15, 2002); *WSOL v. Great N. Asset Mgmt., Inc.*, 114 F. Supp. 2d 720, 724 (N.D. Ill. 2000). Triple Canopy's accounting claim is more than sufficient to put Mary and Group on notice of these claims, and thus satisfy the requirements of notice pleading. (*See* D.E. 1 ¶¶ 47-48, 52, 57-58, 65-68, 151-157.) Detailed facts need not be alleged, as the issue is not whether Triple Canopy will prevail at trial. (Indeed, to survive summary judgment, the Plaintiffs will need to show that the legal remedy of a jury damages award is not a reasonable one before an equitable accounting would be necessary). Instead, the present issue is whether or not Triple Canopy should be allowed to seek discovery and attempt to survive any summary judgment motion regarding the equitable accounting demand. Triple Canopy has alleged facts that, when construed in the light most favorable to Triple

10

Canopy, could entail a situation where Triple Canopy would be entitled to an equitable accounting.

However, to the extent Triple Canopy alleges fraud as the basis for an accounting, particularity in pleading is required under Rule 9(b). *See* Fed. R. Civ. P. 9(b). The Court finds that Count VII fails to allege that Mary or Group engaged in any fraudulent conduct, let alone the specific timing or circumstances of such conduct. In short, Triple fails to plead with particularity who did what to whom and when. *See Shapo v. Engle*, No. 98 C 7909, 1999 WL 1045086, at *13 (N.D. Ill. Nov.12, 1999).[4]

For these reasons, the Court denies the Motion to Dismiss as to Count VII in part, and grants the motion with respect to any allegation of fraud against Mary or Group in Count VII. These averments are dismissed without prejudice to Plaintiff's ability to replead the relevant fraud allegations with specificity.

### C.    Cyberpiracy Under 15 U.S.C. § 1125(d) (Count VIII)

In Count VIII, Triple Canopy alleges that Mary and Group are liable for cyberpiracy under 15 U.S.C. § 1125(d).   Section 1125(d) provides the elements of a cyberpiracy claim:

> (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and (ii) registers, traffics in, or uses a domain name that– (I) in the case of a mark that is distinctive

---

[4]        In its response to the Motion to Dismiss, Triple Canopy provides a more detailed description of the facts specifically linking Mary and Group to allegations of fraud (D.E. 30 at 14.) However, a plaintiff cannot amend its complaint in its briefs in opposition to a motion to dismiss. *See, e.g., Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987) (citation omitted).

at the time of registration of the domain name, is identical or confusingly similar to that mark; (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d)(1)(A). Mary and Group contend that Count VIII should be dismissed because the Complaint fails to allege that Mary or Group registered the "Triple Canopy" trademark with the requisite ill intent to profit from such mark. The Court respectfully disagrees.

The Complaint specifically alleges that the "Defendants have trafficked in and use the Internet domain name 'Triple Canopy' and over ninety other Internet domain names derived from or related to 'Triple Canopy.'" (D.E. 1 ¶ 163.) Triple Canopy also alleges that the "Defendants have caused the Internet domain name 'Triple Canopy' . . . to be registered." (*Id.* ¶ 162.) Finally, the Complaint alleges that the "Defendants had, and continue to have a bad faith intent to profit from the 'Triple Canopy' trademark." (*Id.* ¶ 161.) Accepting these allegations as true and drawing all reasonable inferences therefrom in favor of Triple Canopy, given the minimalist notice pleading requirements of Rule 8(a), these allegations are sufficient to assert a claim for cyberpiracy. Accordingly, the Court denies Triple Canopy's motion to dismiss Count VIII.

### D.     Tortious Interference with Contract (Count X)

Under Illinois law, one of the essential elements of a cause of action for tortious interference with contract is that "the defendant intentionally and unjustifiably induced a breach of the contract." *Smock v. Nolan*, 361 F. 3d 367, 372 (7th Cir. 2004) (citing *HPI Health Care Serv., Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672, 676 (1989)). In

12

Count X, Triple Canopy alleges that Mary and Group rendered Triple Canopy's performance with respect to its contracts with the Coalition Provisional Authority unduly burdensome, difficult and/or expensive. (D.E. 1 ¶¶ 177-178.) The parties dispute whether Illinois law requires inducement of a breach of contract, on the one hand, or merely causing increased burden, difficulty, or expense of performance, on the other, to ground an assertion of this tort.

Allegation of an actionable breach is not a prerequisite to an interference with contract claim under Illinois law. *See, e.g., Hidrovia, S.A. v. Great Lakes Dredge & Dock Corp.*, No. 02 C 5408, 2002 WL 31509689, at *3 (N.D. Ill. Nov. 7, 2002) (Plunkett, J.). As explained by Judge Plunkett in *Hidrovia*, where he undertook a thorough and thoughtful review of this area of law, in Illinois "'the scope of the cause of action is broader and encompasses the situation in which the defendant prevents the plaintiff from performing the contract.'" *Id.* (quoting *Scholwin v. Johnson*, 498 N.E.2d 249, 255 (Ill. App. Ct. 1986)).

Nonetheless, as Judge Plunkett also explained, "[t]hough the Illinois courts have espoused the prevention of performance . . . [approach set forth in the Restatement (Second) of Torts § 766A], they have yet to adopt the more expensive or burdensome [performance of the contract approach discussed in Section 766A of the Restatement]." *Id.* Judge Plunkett's analysis in *Hidrovia*—in which he rejected the idea that an allegation of making performance more expensive or difficult could ground a claim—was rooted in Seventh Circuit precedent. Specifically, *Hidrovia*, quoting and following *George A. Fuller Co. v. Chicago Coll. of Osteopathic Med.*, 719 F.2d 1326, 1330-31 (7th Cir. 1983), explained that

13

Our review of Illinois case law reveals no ruling that a cause of action for tortious interference with contract can be stated on the basis of 'adverse impact' or 'hindrance of contract.' With respect to the breach element of tortious interference with contract, both the Illinois Supreme Court and the Illinois Appellate Court consistently require more than conduct rendering performance of the contract more burdensome, writing in terms of requiring either a breach of contract, termination of the contractual relations, or rendering performance impossible.

*Hidrovia*, 2002 WL 31509689 at *3 (quoting Fuller, 719 F.2d at 1330-31); *see also Fuller*, 719 F.2d at 1330-31 (affirming dismissal of complaint for failure to state a cause of action for tortious interference with contract because no resulting breach was alleged).[5]

This Court is bound by Seventh Circuit precedent as was Judge Plunkett. This Court agrees with Judge Plunkett that under applicable precedent, Plaintiff has failed to state a claim. The Court finds that Triple Canopy's allegation of mere increased burden and expense of performance of the contracts with the Coalition Provisional Authority is insufficient to state a claim for tortious interference with contract. Accordingly, the Court grants the Motion to Dismiss as to Count X.

### E.  Tortious Interference with Prospective Economic Gain (Count XI)

Count XI alleges a claim for tortious interference with prospective economic

---

[5] To the extent Triple Canopy argues that Illinois law incorporates Section 877(A) of the Restatement (Second) of Torts (the "Restatement")—which recognizes the tort of interference with contract even when a defendant merely causes a plaintiff's performance of the contract to be more expensive or burdensome—this argument is misplaced. In the few cases applying Illinois law that cite the Restatement, the respective court did not rule on the applicability of this portion of the Restatement because, in each case, the defendant's conduct "made it impossible" for the plaintiff to perform the contract. *See, e.g., Havoco of America, Ltd. v. Sumito Corp. of America*, 971 F.2d 1332, 1345 (7th Cir. 1992); *Scholwin v. Johnson*, 498 N.E.2d 249, 255 (Ill. App. Ct. 1986). As Judge Plunkett recently remarked, the Plaintiff has not cited "a single Illinois case in which allegations of increased burden were held sufficient to state a tortious interference of contract claim." *Hidrovia*, 2002 WL 31409689, at *3-4 (granting motion to dismiss a tortious interference with contract claim on the ground that the plaintiff alleged performance of the contract was merely more burdensome, rather than impossible).

14

gain. The elements of this tort are: the plaintiff had a reasonable expectation of entering into a valid business relationship, the defendant knew of this expectancy, the defendant purposefully interfered to prevent the expectancy from being fulfilled, and damages to the plaintiff resulted from the interference. *See, e.g., Delloma v. Consol. Coal* Co., 996 F.2d 168, 170-71 (7th Cir. 1993).

Mary and Group argue that Count XI should be dismissed because Triple Canopy does not adequately allege its claim, in that Triple Canopy does not allege that Mary or Group took any action directed towards a third party. (*Id.*) In this regard, Mary and Group rely solely on Illinois state court decisions concerning pleading burdens. (D.E. 28 at 11 (quoting *Grund v. Donegan*, 700 N.E. 2d 157, 161 (1st Dist. 1998), and citing *Schuler v. Abbott Labs.*, 639 N.E. 2d 144, 147 (Ill. App. Ct. 1993), and *Galinski v. Kessler*, 480 N.E.2d 1176, 1180 (Ill. App. Ct. 1985).) Reliance on Illinois state court decisions is off the mark here. Illinois state courts are bound by Illinois fact pleading requirements, which dictate that a complaint fails to state a cause of action if it does not contain allegations of each fact that must be proved to sustain a judgment for the plaintiff. *Schuler*, 639 N.E. at 149 (citing *Madonna v. Giacobbe*, 546 N.E. 2d 1145 (Ill. App. Ct. 1989)). As the parties are aware, Illinois pleading standards do not apply here; the Complaint is subject to the minimal requirements of federal notice pleading.

In this regard, the parties fail to cite the controlling federal precedent analyzing the Illinois tort of interference with prospective economic gain under the applicable federal notice pleading standard. *See Cook v. Winfrey*, 141 F.3d 322, 328 (7th Cir. 1998). In *Cook*, the Seventh Circuit specifically rejected the defendant's attempt to rely on Illinois state court cases like *Schuler*—which require the plaintiff to allege an expectancy

with a specific third party and action directed towards the party—for "stray[ing] rather far afield from the minimum requirements of federal notice pleading." *Cook*, 141 F.3d at 327-28. The Seventh Circuit held that the plaintiff was under no obligation to plead any additional facts to sustain a claim for this tort on the ground that "[t]he Federal Rules do not require that his complaint allege the specific third party or class of third parties with whom he claims to have had a valid business expectancy." *Id.* at 328; *accord Am. Diagnostic Med., Inc. v. Cardiovascular Care Group*, No. 03 C 8929, 2004 WL 1490268, at *3 (N.D. Ill. July 1, 2004). Ultimately, the *Cook* court found the following allegation sufficient to sustain a claim: "[Plaintiff] improperly interfered with [defendant's] 'ability to enter into contracts or business relationship with third parties interested in purchasing the rights to publication of his experiences.'" *Id.*, 141 F.3d at 328 (quoting complaint in *Cook*).

In the case *sub judice*, Triple Canopy alleged that a business expectancy existed with the Coalition Provisional Authority, actually naming a specific third party, and further alleged that Mary and Group intentionally interfered with the expectancy. (D.E. 1 ¶¶ 181-182, 184-189.) As instructed by precedent, the Court finds these allegations sufficient to sustain a claim for tortious interference with prospective economic gain. *Cook*, 141 F.3d at 328. Accordingly, the Motion to Dismiss is denied as to Count XI.

**F.     Claims Under the Illinois Consumer Protection Statutes
        (Counts XII and XIII)**

**1.     Count XII - The Fraud Act**

Count XII alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 (the "ICFDBPA"), premised on fraud. (D.E. 1 ¶

16

191.) Mary and Group contend that Count XII should be dismissed against Mary and Group because it is not pled with sufficient particularity. The Court agrees.

To state a claim under the ICFDBPA, a plaintiff must allege that (1) defendant engaged in a deceptive act or practice; (2) with the intent that plaintiff rely on the deception, (3) in the course of trade or commerce, and (4) the deception was the proximate cause of plaintiff's alleged injury. *See Neff v. Capital Acquisitions & Mgmt. Co.*, 238 F. Supp. 2d 986, 994 (N.D. Ill. 2002) (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. App. Ct. 1997)). A complaint alleging a violation of the ICFDBPA, which, as here, is premised on fraud, must be pled with the same particularity and specificity as that required under common law fraud under Rule 9(b). *Murry v. America's Mortgage, Banc, Inc.*, No. 03 C 5811, 2004 WL 1474584, at *6 (N.D. Ill. June 29, 2004) (citing *Gallagher Corp. v. Mass. Mut. Life Ins. Co.*, 940 F. Supp. 176, 180 (N.D. Ill. 1996)). Specifically, a plaintiff subject to Rule 9(b) strictures must state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992)). At this stage, Rule 9(b) requires that the plaintiff identify the alleged misrepresentation, but not actually prove that the statement was false. *See id.*

A careful reading of the Complaint reveals that Count XII does not satisfy Rule 9(b)'s heightened pleading requirements. None of the allegations incorporated in Count XII aver a specific misrepresentation, let alone that Mary or Group actually made any misrepresentation. Nor do they allege other deceptive acts or practices by Mary or Group with the requisite particularity. The Complaint only refers to specific actions taken by

17

Moore, and is devoid of any allegations, beyond the conclusory allegation that "Moore, Group and Mary Moore have utilized deception, fraud, false pretense, false promise, and/or misrepresentation," specifically linking Mary or Group to violations of the Fraud Act. (D.E. 1 ¶ 191.) Triple Canopy also fails to plead any facts that indicate Mary or Group intended for Triple Canopy to rely on a deception. Accordingly, the Court grants the Motion to Dismiss as to Count XII with respect to Mary and Group.[6] This Count is dismissed without prejudice.

## 2. Count XIII - The Deceptive Trade Practices Act

Count XIII alleges that Mary and Group, in the course of their business, vocation or occupation, caused "a likelihood of confusion or misunderstanding" with respect to Triple Canopy's products or services in violation of section 2 of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1-7 (the "IUDTPA"). (D.E. 1 ¶¶ 197-199.) Mary and Group contend that Count XIII should be dismissed because the Complaint does not provide the requisite particularity under Rule 9(b). The Court respectfully disagrees.

Courts in this district have held that similar claims are not governed by Rule 9(b). In *Publications International, Ltd. v. Leapfrog Enter., Inc.*, the court concluded that where, as here, the IUDTPA claim is based on likelihood of confusion or misunderstanding, the claim is subject to federal notice pleading standards. *Id.*, No. 01 C 3876, 2002 WL 31426651, at *6 (N.D. Ill. Oct. 29, 2002) (Gettleman, J.). The court

---

[6] Even though the parties disagree on whether the Complaint must include specific allegations to satisfy the "in the course of trade or commerce" element of the Fraud Act, the Court need not decide this issue because there are other grounds to dismiss Count XII.

reasoned that such a claim "does not necessarily constitute fraud in a manner that would implicate Fed. R. Civ. P. 9(b)." *Id.* at *6. *Accord, e.g., M&R Printing Equip., Inc. v. Anatol Equip. Mfr. Co.*, 321 F. Supp. 2d 949, 952 (N.D. Ill. 2004) (Castillo, J.) (denying motion to dismiss an IUDTPA claim on the ground that the complaint "easily satisfies liberal federal pleading standards"); *Pain Prevention Lab, Inc. v. Elec. Waveform Labs, Inc.*, 657 F. Supp. 1486, 1494 (N.D. Ill. 1987) (Moran, J.).

The *Leapfrog* court specifically relied on the fact that the plaintiff's IUDTPA claim based on likelihood of confusion or misunderstanding was "practically identical to the language in . . . the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) asserted in [another] Count . . [in the complaint] . . . " and the defendant had "not asserted that plaintiff's Lanham Act claim is subject to the heightened pleading standards outlined in Fed. R. Civ. P. 9(b)." 2002 WL 31426651, at *6 n.5. Triple Canopy's IUDTPA claim is "practically identical" to its claim for unfair competition under the Lanham Act. (*See infra* Section II.A.) Moreover, like the defendant in *Leapfrog*, Mary and Group have not asserted that the Lanham Act claim is subject to Rule 9(b)'s particularity requirements. *Accord McDonald's Corp. v. Grunville*, 441 F. Supp. 71, 73-74 (N.D. Ill. 1977) (applying notice pleading standard to Lanham Act claim).

Claims under the IUDTPA are resolved according to the principles set forth under the Lanham Act. *See, e.g., Vincent v. City of Chicago*, No. 04 C 7641, 2005 WL 818410, at *3 (N.D. Ill. Apr. 6, 2005) (Leinenweber, J) (collecting cases). For the reasons explained in Section II.A immediately below, the Court concludes that Triple Canopy's IUDTPA claim survives the Motion to Dismiss.

19

## II.     Claims Against Group

### A.     Unfair Competition Under the Lanham Act (Count IX)

Count IX alleges unfair competition under the Lanham Act. 11 U.S.C. § 1125(a).

To succeed on a claim for unfair competition under the Lanham Act, a plaintiff must

demonstrate that it is the rightful owner of a protectable trademark, and that the defendant

used the trademark in commerce, in a manner likely to cause confusion, mistake, or

deception. *Id.*; *see also Munters Corp. v. Matsui America, Inc.*, 909 F.2d 250, 252 (7th

Cir. 1990); *Forum Corp. of North America v. Forum, Ltd.*, 903 F.2d 434, 439 (7th Cir.

1990); *Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*, No. 03 C 6070, 2004 WL

2967446, at *4 (N.D. Ill. Nov. 15, 2004). Mary and Group contend that Count IX should

be dismissed because Triple Canopy fails to support its general allegation that Triple

Canopy is the "rightful owner" of the Triple Canopy trademarks and related Internet

domain names, and fails to adequately plead that Mary and Group used the trademarks in

a way likely to cause confusion. (D.E. 28 at 8 and D.E. 33 at 7-8.)[7] The Court

respectfully disagrees.

The Seventh Circuit has instructed that "a party may acquire a protectable right in

a trademark only through use of the mark in connection with its product." *Johnny

Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 434 (7th Cir. 1999) (citing

*Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992)); *see also S. Indus., Inc.*

---

[7]     In the Motion to Dismiss, Mary and Group also argue that Count IX should be
dismissed because Group concedes that it is the owner of the "Triple Canopy" trademarks on
federal registrations. (D.E. 28 at 7.) The Court declines to address this argument because, in its
reply papers, Mary and Group acknowledge that "the trademarks are not yet registered and that
their brief was in error in this regard." (D.E. 33 at 7 n.5.)

*v. Diamond Multimedia Sys., Inc.*, 991 F. Supp. 1012, 1018 (N.D. Ill. 1998) ("Trademark rights are acquired by adoption and use, not by registration."). In addition, a trademark application is subject to previously established common law trademark rights of another party. *Johnny Blastoff*, 188 F.3d at 435. "Under the common law, one must win the race to the marketplace to establish exclusive use of the mark." *Zazu*, 979 F.2d at 503; *see also Pure Imagination,* 2004 WL 2967446, at *5 ("Service mark ownership is determined by the first to use the mark in commerce."). "The amount of activity sufficient to constitute use is a factual question determined on case by case basis." *DSMR, LLC, et al. v. Goldberg*, No. 02 C 5203, 2004 WL 609281, at *4 (N.D. Ill. March 25, 2004).

Triple Canopy's Complaint contains several allegations regarding ownership of the "Triple Canopy" trademarks and Internet domain names. Specifically, the Complaint alleges that Triple canopy is the "rightful owner" of such intellectual property (D.E. 1 ¶¶ 167-168), that "[such] intellectual property was obtained for and is used exclusively by Triple Canopy, which is its rightful owner" (*Id.* ¶ 53), and that Triple Canopy "is the exclusive user of the Internet domain name <triplecanopy.com>" (*Id.* ¶ 62.). If it is true that Triple Canopy has been the "exclusive user" of the trademarks and domain names, then it follows that Triple Canopy was the first user of such intellectual property. In other words, Triple Canopy has alleged facts that, when construed in the light most favorable to Triple Canopy, could entail a situation where Triple Canopy might prove it is the rightful owner of the trademarks.

Moreover, the Complaint adequately pleads likelihood of confusion. Whether a likelihood of confusion exists is a question of fact. *Henri's Food Prods. Co., Inc. v. Kraft, Inc.*, 717 F.2d 352, 354 (7th Cir. 1983). The Seventh Circuit considers the following

21

seven factors to determine likelihood of confusion: the degree of similarity between the marks in appearance and suggestion; the similarity of the products for which the name is used; the area and manner of concurrent use; the degree of care likely to be exercised by consumers; the strength of the complainant's mark; actual confusion; and an intent on the part of the alleged infringer to palm off his products as those of another. *AHP Subsidiary Holding Co. v. Stuart Hale* Co., 1 F.3d 611, 615 (7th Cir. 1993). None of these factors is dispositive: the weight of each differs from case to case. *Id.*

It is important to note that Triple Canopy need not prove the likelihood of confusion at the pleading stage. *McDonald's Corp.*, 441 F. Supp. at 73-74. Triple Canopy is only required to allege that Mary and Group's actions are likely to lead to confusion. For example, in *McDonald's*, the allegation that defendants' sign "is causing and is likely to cause confusion and mistake, as well as to deceive purchasers and the public," sufficiently stated a claim under the Lanham Act. *McDonald's Corp.*, 441 F. Supp. at 73-74. Here, the Complaint expressly alleges that Group has used the Triple Canopy trademarks and Internet domain names in a manner likely to "cause confusion, or to cause mistake, or to deceive." (D.E. 1 at ¶¶ 169-171.) Since the ultimate test of Triple Canopy's claim is whether there is likelihood of confusion by the consuming public, a question of fact which cannot be decided on a motion to dismiss, the Court declines any invitation to dismiss the claim on such basis at this time.

Finally, Group's reliance on *Sweet v. City of Chicago,* 953 F. Supp. 225, 231 (N.D. Ill. 1996), is misplaced. (D.E. 33 at 8.) In *Sweet,* the court dismissed an unfair competition claim based on, *inter alia,* the fact that the plaintiffs *could not* show a likelihood of confusion between a guidebook that provided information regarding

22

restaurants that displayed works of art for sale, and an art fair that provided no such information. *See id.*, 953 F. Supp. at 231. The *Sweet* court found Rule 12(b)(6) dismissal proper chiefly because the goods and services were unrelated as a matter of law. *Id.* *Sweet* presented a situation markedly different from that at bar. There simply are no allegations in the Complaint which suggest that Triple Canopy could not, as a matter of law, possibly demonstrate likelihood of confusion with respect to the Triple Canopy trademarks and Internet domain names. This is not an issue for resolution via Fed. R. Civ. P. 12.

### B.     Rescission (Count IV)

In Count IV, Triple Canopy asserts a claim for rescission of the Licensing Agreement and the Amendment. Group contends Count IV should be dismissed for failure to plead with the requisite particularity required by Rule 9(b). (D.E. 28 at 5.) In response, Triple Canopy argues that it sufficiently alleges a claim for rescission based upon fraud, mistake, concealment, and/or undue influence and that rescission will restore the parties to the *status quo ante*. (D.E. 33 at 11.) For the reasons stated below, the Court dismisses Count IV, as to Group, without prejudice.

*Fraud.* As stated above, averments of fraud must be plead with particularity under Rule 9(b), which means the complaint must allege a specific misrepresentation, as well as the time, place and content of the misrepresentation. *See, e.g., Bankers Trust Co.*, 959 F.2d at 683. Count IV fails to set out any misrepresentations on the part of Group. The Complaint also fails to "inform each defendant of the specific fraudulent acts which constitute the basis of the action against the particular defendant." *Cross v. Simons*, 729 F. Supp. 588, 594 (N.D. Ill. 1989) (internal quotation omitted). Indeed, Rule 9(b) is

designed to protect defendants from this sort of "[discovery] fishing expedition[], and to provide adequate notice to defendants of the claims against them." *Fugman v. Aprogenex, Inc.*, 961 F. Supp. 1190, 1194 (N.D. Ill. 1997).

*Fraudulent Concealment.* Fraudulent concealment must be pled with particularity under Rule 9(b). *See, e.g., Beauchem v. Rockford Prod. Corp.*, No. 01 C 50134, 2004 WL 432328, at *1 (N.D. Ill. Feb. 6, 2004); *Spann v. Community Bank of Northern Virginia*, No. 03 C 7022, 2004 WL 691785, at *8 (N.D. Ill. March 30, 2004). To establish fraudulent concealment, a party must prove that: (1) there was concealment of a material fact; (2) the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) the innocent party could not have discovered the truth through a reasonable inquiry or inspection and relied upon the silence as a representation that the fact did not exist; (4) the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) reliance by the person from whom the defendant concealed the fact led to his injury. *Trustees of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 776 (7th Cir. 2002). Under Illinois law, the failure to disclose material information is actionable "only if the person failing to disclose the information owed a duty to disclose that information." *Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F. Supp. 1358, 1366 (N.D. Ill. 1996) (internal quotation omitted).

Count IV fails to allege the gravamen of a fraudulent concealment claim with respect to Group—that is, that Group concealed a material fact. Although Count IV includes a general allegation that Moore concealed "material facts," the Complaint does not allege Group's role in any such concealment, nor does it hint at the time, place, or content of such concealment. Count IV also fails to allege that Group owed Triple

24

Canopy a duty to provide accurate information.

*Mistake.* As stated above, Rule 9(b) also requires that circumstances constituting an alleged mistake be plead with particularity. But, as the Seventh Circuit noted in *Bankers Trust Co.*, it is rare for a court to dismiss a complaint for failure to allege mistake with adequate particularity. *See id.*, 959 F.2d at 683.

To state a claim for rescission based on mistake, three conditions must be satisfied. *Bd. of Tr. of the Ironworkers Local No. 498 Pension Fund, et al. v. Nationwide Life Ins. Co., et al.*, 04 C 821, 2005 WL 711977, at *8 (N.D. Ill. Mar. 28, 2005) (citing *John J. Calnan Co. v. Talsma Builders, Inc.*, 367 N.E.2d 695, 698 (Ill. 1977)). "First, the mistake must relate to a material feature of the contract; second, it must have occurred despite the exercise of reasonable care; and third, the other party must be placed *in status quo.*" *Id.* The Complaint fails to allege *any* mistaken fact with respect to Group, that such fact relates to a material feature of either the Licensing Agreement or Amendment, that Triple Canopy exercised reasonable care, or that rescission would return Triple Canopy to the *status quo.* Indeed, nothing in the Complaint puts Group on notice of a claim for rescission based on mistake. In other words, the claim for rescission based on mistake does not satisfy even the minimal requirements of federal notice pleading, let alone the particularity requirement of Rule 9(b).

*Undue Influence.* Undue influence is the only basis for rescission cited by Triple Canopy which is not subject to heightened pleading requirements. Nevertheless, it is not clear to the Court how any of the allegations in Count IV even hint that Triple Canopy alleges undue influence with respect to Group. Triple Canopy's post-hoc laundry list of potential bases for rescission in its response to the Motion to Dismiss does not correct the

25

fact that the Complaint fails to put Group on notice of a claim for rescission based on undue influence. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) (stating that plaintiffs do not have to plead facts or legal theories, but that plaintiff's complaint "would be insufficient" if defendant "would not have known how to respond" to the charges). Indeed, a plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claim." *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991).

For all of these reasons, the Court grants the Motion to Dismiss Count IV as it pertains to Group.[8] This count is dismissed without prejudice.

### C. Unjust Enrichment (Count V)

Count V alleges a claim for unjust enrichment. Under Illinois law, a plaintiff states a cause of action for unjust enrichment by demonstrating that the defendant "unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of that benefit violates fundamental principles of justice, equity and good conscience." *Annecca, Inc. v. Lexent, Inc.*, 345 F. Supp. 2d 897, 908 (N.D. Ill. 2004) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp.*, 545 N.E.2d 672, 679 (1989)).

Group contends that Count V should be dismissed because it incorporates allegations regarding the formation and existence of the Licensing Agreement and Amendment. Indeed, a claim for unjust enrichment is based upon an implied, rather than a specific contract. Accordingly, "where there is a specific contract which governs the

---

[8]     Group also argued that Count IV should be dismissed as it pertains to Group because all of Moore's alleged actions with respect to this count are alleged to have been in his capacity as Chief Executive Office of Triple Canopy. The Court need not address this argument because the Court grants Group's motion to dismiss Count IV on the grounds described above.

relationship of the parties, the doctrine of unjust enrichment has no application." *Ind. Lift Truck Serv. Corp. v. Mitsubishi Int'l. Corp.*, 432 N.E.2d 999, 1002 (Ill. App. Ct. 1982) (citing *La Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188, 195 (Ill. App. Ct. 1977)); *see also F.H. Prince & Co., Inc. v. Towers Fin. Corp.*, 656 N.E.2d 142, 151 (Ill. App. Ct. 1995) ("Since the doctrine of unjust enrichment presents an implied or quasi-contract claim, where there is a specific contract which governs the relationship of the parties, the doctrine has no application."); *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir.1985). In response, Triple Canopy argues that Federal Rule of Civil Procedure 8(e)(2) allows a plaintiff to plead inconsistent claims in the alternative. *See* Fed. R. Civ. P. 8(e)(2) ("A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses.")

The Court finds that Triple Canopy has not "pled itself out" of court by alleging inconsistent facts. Triple Canopy has not alleged that a valid contract existed. Rather, Count V incorporates by reference paragraph 64 of the Complaint, which alleges that there exists a "'sham' Licensing Agreement" between Triple Canopy and Group. (*Id.* ¶ 64.) In addition, Count V specifically refers to the Licensing Agreement as a "sham." (*Id.* ¶ 132.) In alleging that the agreement is a "sham," the Complaint puts Group on notice that Triple Canopy challenges the validity of the agreement and further suggests that it is a nullity.

Finally, the Court rejects Group's argument that Triple Canopy failed to sufficiently plead a claim for unjust enrichment. The Complaint alleges that Group unjustly retained benefits, including, *inter alia*, Triple Canopy trademarks and Internet

27

domain names, to Triple Canopy's detriment. (D.E. 1 ¶¶ 54-56, 64-71, 132-137.) The Court finds that these allegations are sufficient to put Group on notice of the claim for unjust enrichment.

For all of these reasons, the Court denies the Motion to Dismiss Count V.[9]

## III.    Motion for More Definite Statement

Defendant moves in the alternative for a more definite statement. (D.E. 12 at 15.) The request is moot as to the Counts the Court is dismissing. With respect to the remaining Counts, the question remains whether the Court should grant the request for a more definite statement, or alternatively, to allow allegations to be clarified during discovery.

Rule 12(e) provides that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). Rule 12(e) "makes it plain that the rule is designed to strike at unintelligibility rather than want of detail. If the pleading meets the requirements of Rule 8 . . . and fairly notifies the opposing party of the nature of the claim, a motion for a more definite statement should not be granted." *Wishnick v. One Stop Food & Liquor Store, Inc.*, 60 F.R.D. 496, 498 (N.D. Ill. 1973); *see also Scholz*

---

[9]    The Court declines to address Mary and Group's argument regarding punitive damages at this juncture—without prejudice to their ability to raise the issues again during or at the conclusion of trial or at the summary judgment stage. Notably, this is not a case where punitive damages are not permitted under any circumstances with respect to any of the plaintiff's claims. *Compare Witt v. County Ins. & Fin. Servs.*, No. 04 C 3938, 2004 WL 2644397, at *6-7 (N.D. Ill. Nov. 19, 2004) (striking demand for punitive damages for retaliation claim under American Disability Act based on Seventh Circuit decision holding that the ADA does not allow a plaintiff to recover punitive damages with respect to such claims).

*Design, Inc. v. Buralli*, No. 01 C 3650, 2001 WL 1104647, at *4 (N.D. Ill. Sept. 18, 2001); *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, No. 92 C 1658, 1992 WL 211023, at *2 (N.D. Ill. Aug. 21, 1992). In other words, the class of pleadings that are appropriate subjects for a motion under Rule 12(e) is rather small. Indeed, "[a] motion for a more definite statement should not be used to obtain factual details or as a substitute for discovery." *Trans States Airlines*, 1992 WL 211023, at *2. The Court finds that, for the reasons discussed herein, the remaining Counts are not so vague or ambiguous that Group cannot respond to them. Accordingly, the Court denies Group's motion for a more definite statement.

## IV. Conclusion

For all of these reasons, the Motion to Dismiss is granted in part and denied in part. The motion for a more definite statement is denied.

So ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Date: 7-1-05

29